**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**THOMAS EDWARDS,**

    **Petitioner,**

    **v.**

**UNITED STATES OF AMERICA,**

    **Respondent.**

**CASE NO. 2:13-CV-01068
CRIM. NO. 2:11-CR-229**

**JUDGE GREGORY L. FROST
Magistrate Judge Kemp**

## REPORT AND RECOMMENDATION

On January 17, 2013, the Court entered a judgment of conviction against Petitioner Thomas Edwards following his plea of guilty, in this case, to a Superseding Information charging him with one count of possession of a firearm in furtherance of a drug trafficking crime, a violation of 18 U.S.C. §924(c), and one count of possession with intent to distribute more than 100 marijuana plants.  Pursuant to a written plea agreement (Doc. 52), the United States agreed to dismiss a prior Superseding Indictment which alleged fifteen counts of criminal conduct charged under 21 U.S.C. §§841, 846, and 853 and 18 U.S.C. §§2, 922, and 924, as well as multiple forfeiture counts.  The Court sentenced Petitioner to 60 months of imprisonment on Count One of the Information and 38 months of imprisonment on Count Two, to be served concurrently.  *See* Doc. 75. The judgment and commitment order was later amended to reflect that the sentences were to be run consecutively rather than concurrently.  *See* Doc. 88.  Petitioner has appealed that order.  *See* Doc. 88.  That appeal is still pending.

Petitioner appealed his sentence to the United States Court of Appeals for the Sixth

Circuit by way of a notice of appeal filed by the Clerk. Doc. 77. The appeal was dismissed for lack of prosecution on February 15, 2013. Doc. 78.

On October 28, 2013, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255. The United States responded on March 5, 2014. Petitioner filed a reply on March 21, 2014, and the case is now ready to decide. Petitioner has also filed a number of motions which will be addressed below. For the following reasons, it will recommended that the motion to vacate be **DENIED**.

## I. Petitioner's Claims for Relief

Petitioner's motion (Doc. 81) sets forth four grounds for relief. The Court will state them here exactly as Petitioner states them in his motion. They are:

**GROUND ONE**: Ineffective Assistance of Counsel

**Supporting facts**: Counsel failed to complete the following required Actions:

> Failed to File Pre-Trial Motions

> Failed to give reasonable advice concerning Plea

> Failed to file the appropriate Objections to the PSR

> Failed to Properly raise Sentencing Mitigating Circumstances

> Failed to properly file my Direct Appeal, as he told me I would get more time if I attempted to Appeal

> Failed to give me a Factual Basis for the Plea concerning the Firearm Mandatory minimum, and the In-Operable Firearm

> Failed to represent me in an Effective Manner.

**GROUND TWO**: Due Process Violation Arising Out of Outrageous Government Conduct and Prosecutorial Misconduct.

**Supporting Facts**: The Prosecution attempted to Ambush me in not giving me adequate time to make objections to the PSR.  Threatened if I did not plead guilty, that I would get more time.  180-210 months to be exact, and they also specifically stated that "The Grand Jury Indicts in two Hours", and I would be facing "A 13 Person Superseding Conspiracy Indictment, involving numerous Family Members".  That If I did not plea, I "Could get 55 years" than "I will call you back to see if you will cooperate then".  The Search Warrant was Five years old also.

**GROUND THREE**: My criminal History Score is Incorrect and Egregiously Over represented by my True Criminal History.

**Supporting facts**: I have been given 2 points for a Prior Conviction that did not exceed a term of Imprisonment of One year and One Month.  I was improperly given these points as the Offense occurred over 10 Years ago.  My Criminal History Score is also based off of very minor crimes, and crimes that happened almost 15 years ago.  My Criminal History Score was wrong, and over represents my true criminal history.

**GROUND FOUR**: The United States District Court Committed Plain Error When it Sentenced me.

**Supporting facts**: The Facts that support this claim are Clear and Obvious to see.  I was sentenced to a Consecutive Term of Imprisonment for A 924(c) Count that involved an In-Operable Firearm.  There was Booker Error because of this Consecutive Sentence AS Well, wherein my attorney failed to prepare for sentencing because he automatically assumed I would get the Five Year Minimum Mandatory.

Petitioner also filed a memorandum of law in support of his motion.  Doc. 82.

The United States, in its response, contends that none of the grounds for relief alleged in the motion has merit.

## II. Discussion

3

## A.  Ineffective Assistance of Counsel

The right to counsel guaranteed by the Sixth Amendment is the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 697. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that petitioner has

failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697.

Petitioner has raised multiple claims of ineffective assistance of counsel.  The Court considers each of them in turn.

### 1.   The Failure to File Pretrial Motions

In his motion to vacate, Petitioner faults his attorney, James Gilbert, for failing to file pretrial motions.  It is not entirely clear what type of motions he refers to.  In his arguments on this subject, he identifies certain matters relating to the sentencing process, but those are not typically viewed as "pretrial" motions, so they will be discussed later.  Petitioner does assert that "had he been given reasonable advice concerning the validity of the Search, Validity of the Use of the in-Operable Firearm, and the Misconduct by his attorney in relaying the threat from the government" (i.e. that he was facing a potential sentence of 55 years if he did not plead guilty), he would not have entered his plea.  Broadly construed, he appears to be claiming that Mr. Gilbert should have filed motions challenging a search warrant and the government's ability to base a weapons charge on an inoperable firearm.

Mr. Gilbert has submitted an affidavit which addresses some of these matters. It is an attachment to the United States' response (Doc. 97) to the motion to vacate.  In it, he notes that he received full discovery from the United States, which he provided to Petitioner, and that he discussed the possibility of pretrial motions, but that he and Petitioner agreed that as long as plea negotiations "continued in a satisfactory manner" no motions would be filed.  Further, once Petitioner decided to plead guilty, the fact that there would not be a trial made such motions unnecessary.  The United States defends this

decision as a matter of strategy and contends that any motion to suppress the fruits of the warrant in question (the one issued for 1173 E. 22nd Avenue) would have been unsuccessful.  The United States also asserts that there is no requirement under 18 U.S.C. §924(c) that the firearm used as the predicate for that offense be operable.  Petitioner does not address either of these arguments in his traverse.

The only basis which Petitioner appears to advance as a reason for suppressing the results of the search of the 22nd Avenue location is that the warrant was "five years old." As the United States points out, the search which led to the charges against Petitioner was executed in 2009 (the superseding information refers to possession of both marijuana plants and a firearm which occurred on April 13, 2009).  There is nothing in the record to suggest that the warrant itself was stale on that date, nor has Petitioner made any argument that the warrant (which does not appear to be part of the record in this case) was not supported by probable cause or was otherwise improperly issued or executed.  Since there is no basis in this record for the conclusion that a challenge to the search in question would have succeeded, the failure to have filed a motion to suppress cannot have prejudiced Petitioner. *See Sanders v. United States*, 2014 WL 1281133, *2 (W.D.N.C. March 27, 2014)("To establish deficient performance and prejudice in the context of a failure to file a motion to suppress, a petitioner must demonstrate that such a motion would have been successful"), *appeal dismissed* 2014 WL 2925136 (4th Cir. June 30, 2014).

Petitioner also argues that counsel was ineffective for not arguing that the firearm charge could not be properly based on an inoperable weapon.  However, as Respondent

correctly notes, "the law is clear that a weapon does not need to be operable to be a firearm," *United States v. Yannott*, 42 F.3d 999, 1006 (6th Cir. 1994).  This case is identical to the situation described in *Nunley v. United States*, 72 F.3d 130, *2 (6th Cir. Dec. 1, 1995)(unreported), where the defendant's "sole basis ... for his claim of ineffective assistance [was] that counsel did not challenge count two of the indictment by raising the issue of the inoperability of the gun specified in that count."  But, as the Court of Appeals observed, "[b]ecause that underlying issue is without merit, counsel's failure to raise it was, obviously, not deficient."  *Id*.  The same is true here.

Petitioner also suggests that Mr. Gilbert was ineffective for relaying to him the United States' "threat" to file a superseding indictment charging him with more serious offenses if he did not plead guilty.  There are two problems with this argument.  To the extent that Petitioner might have viewed the United States' intentions as a threat, he did not reveal that "threat" in response to questioning at his plea hearing, nor did he claim to have been influenced by it in his decision to plead guilty.  Second, counsel would have been remiss had he not communicated such information to Petitioner.  *See, e.g., Boria v. Keane*, 99 f.3d 492 (2d Cir. 1996)(finding counsel ineffective for failing to advise his client to plead guilty and receive a sentence of 1 to 3 years when the prosecution had threatened to obtain a superseding indictment on charges carrying penalties of 20 years to life, and noting that under the applicable rules of professional conduct an attorney has a duty to advise a client fully about whether a particular offer to plead guilty appears to be desirable).  Petitioner needed to know all of the possible consequences of a decision to

accept or reject the plea bargain offered to him, and had Mr. Gilbert withheld the prosecution's "threat" of a superseding indictment, Petitioner would not have had a full understanding of his situation.

## 2. Matters Relating to Sentencing

As Respondent characterizes it, the gist of the remainder of Petitioner's ineffective assistance of counsel claim is that his attorney failed "to provide any mitigating factors or motions at the sentencing stage." *Respondent's Opposition*, Doc. 97, at 17.  As Petitioner phrases it in his supporting memorandum (Doc. 82, at 9), "trial counsel failed to submit the necessary and appropriate motions seeking reduction in the Criminal H[i]story Points, Suppression of the Evidence, Mitigating Sentencing Factors, Objections to the PSR, Failed to Perfect the Direct Appeal through threats of an increased sentence."  After making a number of arguments about unwarranted sentencing disparities, Petitioner appears to claim that his sentence should not have been longer than 36 months; that his criminal history score in the Presentence Report was not accurate; and, again, that counsel should have raised issues about the inoperable firearm and the invalidity of the search.  In his traverse, Petitioner also claims that Mr. Gilbert was ineffective for failing to submit a factual statement to the Probation Officer who was preparing the PSR and that counsel should have been able to garner Petitioner credit for accepting responsibility.  He also repeats his assertion that he should not have gotten more than 18 months on the cultivation of marijuana count, instead of the 38 months he received.

The starting point of this discussion is what actually happened during the

sentencing process.  Petitioner pleaded guilty to two charges: possession of a firearm in furtherance of a drug trafficking crime and possession with intent to distribute more than 100 marijuana plants.  Both offenses arose from the execution of search warrant on April 13, 2009, and both counts charged him with conduct occurring only on that date.  Both charges carried a mandatory minimum sentence of five years, and, by law, any sentence on the §924(c) charge had to be run consecutively to any sentence on the marijuana count.

The Presentence Investigation Report noted, in its recap of the offense conduct, the following about the events of April 13, 2009.  "During the course of the search of the residence [at 1173 E. 22nd Avenue], CPD and ATF recovered marijuana, a marijuana grow operation consisting of 184 suspected marijuana plants, cocaine, drug trafficking paraphernalia, U.S. Currency and miscellaneous documents.  Agents also recovered a Smith And Wesson, Model SW40F, .40 caliber pistol, which was loaded with nine rounds of .40 caliber ammunition."  The marijuana weighed 3,164.64 grams.  The PSR used a weight of 163.4 kilograms of marijuana in calculating the guideline range for the drug charge, based on quantities of drugs, including but not limited to marijuana, found both on April 13, 2009 and other dates, and derived a base offense level of 26 for that charge under §2D1.1(c)(7) of the United States Sentencing Guidelines.  Two points was added based on the fact that Petitioner maintained a residence for the purpose of trafficking in drugs; no points were deducted for acceptance of responsibility based on Petitioner's failure to submit a written statement acknowledging his criminal conduct.  With an adjusted offense level of 28 and a criminal history category of V, the guideline range was

calculated at 130 to 162 months, which is substantially higher than the mandatory minimum of 5 years applicable to the drug count. Taking into account the mandatory sentence to be imposed on the §924(c) count, the total guideline range was 190 to 222 months.

The Court, however, did not sentence Petitioner either to the low end of the guideline range, as recommended by the Probation Office, or to the mandatory minimum sentence of 5 years on each count, run consecutively. Rather, the Court granted a substantial downward departure based on the United States' 5K1.1 motion. The United States noted in that motion that, even if certain issues were resolved in Petitioner's favor, including not increasing his base offense level on the drug charge by two points for maintaining a residence for the purposes of drug trafficking and granting him a three-level decrease for acceptance of responsibility, he would still be looking at a guideline range of 84-105 months on that count. The United States asked for a 33% reduction of that range, to a base offense level of 15 and a guideline range of 37-46 months for the drug charge, which, when added to the mandatory consecutive five-year sentence for the §924(c) charge, would result in a new range of 97-106 months. The Court chose a sentence of 98 months. Although it adopted the PSR without change and did not grant Petitioner credit for accepting responsibility, it still followed the United States' recommendation about the new sentencing range which was premised on Petitioner's being given credit for accepting responsibility.

One other factor is worth mentioning. The PSR calculated the weight of marijuana

without apparent reference to USSG §2D1.1, Note (E), which says that "[i]n the case of an offense involving marihuana plants, treat each plant, regardless of sex, as equivalent to 100 G of marihuana." The 184 marijuana plants seized on April 13, 2009, would therefore count as 18.4 kilograms, an amount which, by itself, would produce a base offense level of 16 (not 26). The PSR also erroneously described §2D1.1(c)(7) as applying when between 100 *grams* and 400 kilograms of marijuana are involved; in fact, it applies to weights between 100 *kilograms* and 400 kilograms. The United States repeated this error in its 5K1.1 motion, although both the United States and the probation office were using the 163.4 kilogram figure derived from all relevant conduct and not just the amount of marijuana involved in the April 13, 2009 search. These issues will be discussed further below.

Mr. Gilbert filed a thirteen-page sentencing memorandum in this case. In it, he objected to the PSR's failure to credit Petitioner with accepting responsibility, noting that "there is not question that he accepted a complete responsibility for his actions and charges made in the superseding Indictment" and that he demonstrated this by his proffers. He also noted that the United States did not object to this adjustment of the offense level. *See* Doc. 73, at 5. The memorandum also took issue with the two-level upward adjustment discussed above, so that, as the 5K1.1 motion assumed, the starting point from which a downward adjustment should be made was an offense level of 23.

Next, Mr. Gilbert objected to all of the criminal history points assessed in the PSR. He advanced various reasons for doing so, including the age of some of the convictions (more than ten years prior to the instant offense), the fact that he did not receive prison or

11

jail time on some of them, the fact that some were misdemeanors which involved only the payment of a fine, the fact that many arose from substance abuse issues, and the fact that the charge which resulted in a two-point addition for having been convicted of a crime while on probation was, in fact, a traffic charge, and Petitioner's probation was not affected by this charge. Mr. Gilbert, piggybacking on the United States' request to reduce the offense level to 15, suggested that it should actually be 13 (although he did not clearly state why that should occur), and that with a criminal history category of I (based on 0 points), the correct range for the Court's departure from either the guideline range or the mandatory minimum would be 12 to 18 months. That range, when added to the 5-year mandatory sentence on the §924(c) charge, would have produced a guideline sentence range of 72 to 78 months. The Court did not directly accept any of these arguments, but, as noted, it did sentence Petitioner within the range suggested in the 5K1.1 motion.

It is difficult to see how the alleged errors committed by counsel contributed either to Petitioner's receiving a longer sentence than he should have gotten, or to his decision to plead guilty. Mr. Gilbert did, in fact, object to almost every calculation made in the PSR. His objections were cogent, and Petitioner has not pointed out any additional arguments that he believes should have been made. Although it might have been better practice for Mr. Gilbert to have submitted a factual statement during the PSR process in order to make out a better case for acceptance of responsibility, he could reasonably have believed that the combination of the 5K1.1 motion and the United States' explicit failure to object to Petitioner's being given credit for acceptance of responsibility cured any defect in the

process. Further, there is no evidence that this particular omission affected the sentencing process; quite the contrary, the Court followed the United States' suggestion as to a sentencing range which factored in credit for accepting responsibility. It appears that Petitioner's issues are more with the Court's failure to credit most of Mr. Gilbert's arguments that Mr. Gilbert's alleged failure to have presented them properly - but that issue, of course, had to be raised on direct appeal and cannot be raised for the first time in a motion filed under §2255, nor is it the type of error cognizable in a §2255 proceeding. *See Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996)("nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process").

It is also worth noting that, in order to obtain relief from a guilty plea based on ineffective assistance of counsel, a petitioner must "establish a reasonable probability that [he] would have pled not guilty but for the advice of counsel...." *Hodges v. Colson*, 727 F.3d 517, 539 (6th Cir. 2013). Petitioner claims in his traverse that he "would not have pled guilty to a sentence of 98 months." Doc. 102, at 7. But when he entered his guilty plea, the Court had not yet decided on a sentence of any length and the United States had not filed its 5K1.1 motion. The plea agreement he signed, and acknowledged under oath in court, said in Paragraph 2 that he understood the potential sentences to include, on Count 1 (the §924(g) charge), a mandatory minimum of five years imprisonment, up to a maximum term of life imprisonment, "consecutive to any term of imprisonment as to Count 2," and, on Count 2, a mandatory minimum term of five years and a maximum term of 40 years. *See*

13

Doc. 52. Thus, when he pleaded guilty, Petitioner knew only that if he received the minimum sentence on both counts (and there was no guarantee of that), he would get 120 months - more than the 98 months which he now claims would have caused him to reject the plea offer. He also acknowledged in the plea agreement that no representations or promises were being made to him as to the actual sentence, that he could not withdraw his guilty plea based on the actual sentence, and that the extent to which the Court might deviate from the minimum or guideline sentence range based on any 5K1.1 motion which the United States might file was "solely [a] matter[] for determination by the Court." *Id.*, ¶12. Under these circumstances, there is no credible claim to be made either that anything Mr. Gilbert did or did not say during the plea process improperly influenced Petitioner's decision to plead guilty, or that Mr. Gilbert either could or should have done anything more to obtain an even lower sentence than the Court imposed.

The final portion of Petitioner's claim relating to plea and sentencing appears to be an assertion that he was induced to plead guilty based on advice from his attorney that none of the drugs recovered from other locations or at other times would be counted as relevant conduct for sentencing purposes. Petitioner alleges in his traverse that Mr. Gilbert "told him that if he plead guilty to the Bill of Information he would not be held accountable to the relevant conduct involved in the case...." Doc. 102, at 4. However, the PSR includes a substantial amount of relevant conduct and that relevant conduct appears to have had an impact on the way in which the Probation Office calculated the guideline range. Petitioner asserts that "the true offense conduct in this Case is only the Cultivation of

Marijuana, which was only a 12-18 month offense, at the most." *Id.*

What is missing from this argument is any recognition that because the drug charge to which Petitioner pleaded guilty was the manufacture of 100 or more marijuana plants, the bottom end of the guideline sentence range could not have been any less than 60 months. *See* USSG §5G1.1(b)("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence"). Even if all the relevant conduct were excluded, as noted above, the guideline range based on just the 184 marijuana plants would have been 51-63 months, based on an adjusted offense level of 18 (as the Probation Office would have calculated it, and as the Court accepted it) and a criminal history category of V. *See* USSG Chapter 5, Part A (2013). Applying §5G1.1(b), the range for the drug offense would become 60-63 months, not the 12-18 months which Petitioner suggests, and the aggregate range would have then been 120-123 months. Petitioner still received a sentence substantially below that range, and there is nothing in the record to demonstrate that had the relevant conduct all been excluded, and had the Probation Office calculated the sentencing range at 120-123 months instead, the Court would have reduced Petitioner' sentence even more.

Finally, even if Mr. Gilbert incorrectly advised Petitioner that no relevant conduct would be taken into account, Petitioner's claim of prejudice from such advice cannot be reconciled with the plea agreement. Not only does that agreement contain no such promise, it specifically alerted Petitioner to the fact that the United States would argue for

a guideline calculation based on 16 firearms, 500 grams to 2 kilograms of cocaine, 5-20 grams of cocaine base, and 20-40 kilograms of marijuana. *See* Doc. 52, ¶8(a). Petitioner signed that agreement, acknowledged it in open court, and agreed to the final paragraph as well, which stated that there were no other promises, agreements, or conditions made concerning the guilty plea. If that were not the case, Petitioner had the opportunity to repudiate the plea agreement before he formally entered his plea. Therefore, when he pleaded guilty based on the plea agreement, he could not have been relying on any prior representation that the other relevant conduct would not be taken into account for sentencing purposes. *Cf. Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)(a proper plea colloquy where defendant acknowledges receiving accurate information about something he claims his attorney misled him about prevents the defendant "from claiming prejudice under *Strickland*"). For these reasons, none of Petitioner's ineffective assistance of counsel claims concerning the plea sentencing process have merit.

### 3. Appeal

The claim concerning ineffective assistance of counsel with respect to an appeal is not mentioned in Petitioner's supporting memorandum, but he does refer to it in his traverse, citing to *Roe v. Ortega-Flores*, 528 U.S. 470 (2000) for the proposition that when an attorney is instructed to file a notice of appeal but fails to do so, that failure is ineffective assistance of counsel *per se*. He asserts that he asked for a notice of appeal to be filed, requested appointed counsel, and made an effort to obtain his transcripts while being transported for imprisonment. Beyond those claims, however, he does not make any

allegations concerning what Mr. Gilbert should or should not have done concerning his appeal.

The Court, at Petitioner's request, caused a notice of appeal to be filed on his behalf. *See* Doc. 77. The next entry on the docket is the Court of Appeals' order dismissing the appeal for want of prosecution. According to the Court of Appeals' docket, Petitioner was sent a letter on February 20, 2013 telling him that the appeal had been dismissed but that he could either pay the appellate filing fee or move in the District Court for leave to proceed *in forma pauperis*; failing that, his case would "remain disposed." *See* Case No. 13-3061, Doc. 12. The next document Petitioner filed, however, was the instant motion to vacate, which was not received by this Court until October 28, 2013. Petitioner does not allege that he was somehow prevented by Mr. Gilbert from paying the appellate filing fee, or from pursuing a motion for leave to proceed *in forma pauperis* on appeal, nor does he allege that such a motion would have been granted. His assertion that he asked for appointed counsel on appeal, while not supported by the record, undercuts any claim he might make that Mr. Gilbert had agreed to prosecute the appeal for him. Under these circumstances, he cannot demonstrate either that counsel performed ineffectively or that he was prejudiced by counsel's performance. And because a notice of appeal was filed on his behalf, *Ortega-Flores* is simply inapplicable. There is no merit to this portion of Petitioner's ineffective assistance of counsel claim.

### B. Prosecutorial Misconduct

The primary thrust of the claim of outrageous prosecutorial conduct relates to

the United States' alleged threat to force Petitioner to plead guilty by telling him that if he did not, he would almost immediately face additional charges, a longer sentence, and the risk of having his family members indicted. According to the memorandum filed in support of the motion, such tactics demonstrate bad faith on the part of the prosecution and violated Petitioner's right to due process.

In response, the United States argues that any representations made by the prosecutors concerning other charges and potentially longer sentences were true, as evidenced by the indictment and charges which were dismissed in exchange for Petitioner's guilty plea. Counsel for the United States denies having made certain other statements, but asserts that even if the statements were made, "the defendant has not shown how he would have been entitled to relief, given the favorable Plea Agreement that was reached in this case." *See* Doc. 97, at 22.

The question of how far a prosecutor may legitimately go in plea negotiations is a subject for some debate. But plea negotiations are designed to permit prosecutors to "bargain" for a plea using, among other things, the leverage they possess to bring greater charges against a defendant. The Supreme Court has endorsed this type of give-and-take negotiation, and held, in *Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978), that a "course of conduct engaged in by the prosecutor ... which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." Thus, "[a]lthough a defendant presented with

18

the risk of a more severe punishment faces a difficult choice, this is permissible as a reality in any 'legitimate system which tolerates and encourages the negotiation of pleas.'" *United States v. Martin*, 516 Fed. Appx. 433, 442 (6th Cir. Feb. 25, 2013), *quoting Bordenkircher, supra*, at 364. *See also United States v. Williams*, 47 F.3d 658, 662 (4th Cir. 1995)("*Bordenkircher* and [*United States v.*] *Goodwin* [, 457 U.S. 368 (1982)] have made clear that a prosecutor, in the context of plea negotiations, can threaten to bring a more severe indictment against a defendant to pressure him into pleading guilty").

Petitioner has not shown that any of the statements about which he complains were untrue. Prior to his pleading guilty to a two-count information, he had been charged in a superseding indictment with fifteen separate counts of criminal conduct. Although it is unlikely that, if he had been convicted of all of those counts, he would have received a sentence of 55 years in prison, the statutory maximum allowable for those 15 counts would have been much longer than 55 years. He has also not shown that the prosecutor lacked any reasonable basis for threatening to indict members of his family. Finally, Petitioner disavowed under oath, at the plea hearing, any threats made to him in order to induce his guilty plea. Even if he felt threatened by the prosecutor's statements, his plea was still voluntary and not induced by prosecutorial misconduct. As the court in *United States v. Doe*, 537 F. 3d 204, 213 (2d Cir. 2008) observed, even if a "defendant may have been fearful of the consequences adverted to in the prosecutor's statement, but his decision to plead guilty reflects his considered judgment to avoid those consequences as well as a likely lifetime in prison. There is no legal requirement

19

that the decision to plead guilty be an easy one." This claim is without merit.

## C. Criminal History Score

In his third ground for relief, Petitioner argues that the Court miscalculated his criminal history score. He makes much the same argument as his counsel made in the sentencing memorandum filed before the Court imposed sentence. The United States does not address this argument directly, but does cite *Davis v. United States*, 417 U.S. 333, 346 (1974) for the proposition that in a 2255 proceeding where a non-constitutional legal error is asserted, "the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice...'"), *quoting Hill v. United States*, 368 U.S. 424, 28 (1962).

As the Court observed above, that is the standard applicable in this Circuit to claims made in a §2255 proceeding  that the sentencing guidelines were misapplied.  *See Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  Such issues are normally reserved for the direct appeal, and the failure either to take such an appeal or to raise the issues in an appeal is a waiver of the claim.  This Court has said that "[a] motion to vacate under § 2255 is not a substitute for direct appeal" and that "[a]bsent manifest injustice or special circumstances such as a change in the law, §2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review." *United States v. Bea*, 2007 WL 1193254, *2 (S.D. Ohio Apr. 20, 2007).  Petitioner has not shown any manifest injustice or a change in the law; he simply disagrees with the way this Court determined his criminal history category score.  That claim cannot be raised

or addressed on its merits in a motion filed under §2255.

### D.  Sentencing Error

Petitioner's final claim is that the Court erred in the sentencing process.  As he explains this claim in his supporting memorandum, he contends that the Court treated the sentencing guidelines as mandatory rather than advisory and also erred in sentencing him based upon his admission to possession of an inoperable firearm; he apparently contends that the Court must have found the firearm operable in order to impose a sentence under §924(c) but that only a jury could make that finding.

Leaving aside for the moment the question of whether any portion of this claim was waived because it was not presented on direct appeal, the claim has no factual basis.  The Court did not treat the guidelines as mandatory. Had it done so, Petitioner would have been sentenced in the range calculated by the Probation Office and adopted by the Court, i.e. 190 to 222 months.  The sentence on Count One is not really a guideline sentence at all; it is a statutory sentence which is, unlike a guideline sentence, mandatory.  *See United States v. Wimbley*, 553 F.3d 455, 462 (6th Cir. 2009)(a sentence "set by a statutory mandatory minimum, not the advisory Sentencing Guidelines" is not subject to the Court's discretion to impose a shorter sentence).  On Count Two, the Court clearly exercised its discretion not only to give a below-guideline sentence, but to reduce the sentence below the statutory minimum based on the United States' 5K1.1 motion.

Further, as the Court explained above, the §924(c) sentence did not require a

finding that the firearm in question was operable. Petitioner admits that he stipulated to possessing a firearm. Whether it was operable or not is irrelevant to his sentence. There was no impermissible fact-finding engaged in by the Court in imposing the statutory sentence required by §924(c). Thus, there is no basis for granting relief on this claim.

### III. Recommended Decision

For the reasons stated above, it is recommended that petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. §2255 be **DENIED**. It is further recommended that the following motions be denied as well: Doc. 103 (Motion for Default Judgment), Doc. 108 (Motion for a copy of documents), and Doc. 109 (Rule 60(b) motion). Finally, to the extent that either Petitioner's prior motion to disqualify judges (Doc. 106) or his Rule 60(b) motion request the recusal of the undersigned Magistrate Judge, the Court finds no basis for that request as it pertains to the Magistrate Judge, who is assigned to this case only for purposes of issuing a Report and Recommendation as to the motion to vacate, and who had no involvement in the sentencing issues which form the basis for the motion to disqualify. Any pending request for disqualification of the Magistrate Judge is therefore **DENIED**.

### IV. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made,

together with supporting authority for the objection(s). A judge of this Court shall make a _de novo_ determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation _de novo_, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. _See Thomas v. Arn_, 474 U.S. 140 (1985); _United States v. Walters_, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge